IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRENDA LOUISE SHEERER          :
individually and as parent and  :
natural guardian of C.S., a minor, :
                               :
    Plaintiff,                 : (Judge Richard P. Conaboy)
                               :
        v.                     : Case No. 3:11-CV-1496
                               :
W. G. WADE SHOWS, INC.,        :
                               :
    Defendant.                 :
                               :

_____

**MEMORANDUM**

## I.   Procedural and Factual Background.

We consider here both a Motion for Summary Judgment (Doc. 28) and a Motion in Limine (Doc. 30) filed by Defendant W. G. Wade Shows, Inc. ("Wade") on September 4, 2012.  These motions have been fully briefed by the parties (Docs. 29, 31, 32, 34 and 38) and are ripe for disposition.

Plaintiff Brenda Louise Sheerer ("Plaintiff") is the mother of a son who suffered serious injuries to his arm while riding a mechanical contrivance called "Fright Night" at the Wayne County Fair near Honesdale, Pennsylvania on August 15, 2009.  Plaintiff's son C. S., a minor who is both deaf and afflicted by Down's Syndrome, rode Fright Night on the date in question with his older brother, James Fox.  Plaintiff alleges that, at some point during the ride, C. S.'s arm became caught between the passenger cart in

1

which he and his brother were riding and a wall inside the trailer that housed the ride.  C. S.'s injury was diagnosed as a displaced fracture of the right humerus.

As a result of the events of August 15, 2009, Plaintiff filed the instant lawsuit, a negligence action based upon diversity of citizenship, on August 12, 2011.  (Doc. 1). Plaintiff's complaint alleges that the event of August 15, 2009 resulted in severe injuries to C.S. and "was caused by the carelessness, negligence, and reckless conduct of the Defendant, W. G. Wade Shows, Inc." (Doc.1, ¶ 15). [1]  Plaintiff has provided greater detail as to its allegations of Wade's alleged negligence by way of an expert report prepared by Thomas P. Lacek, P.E.  Lacek's findings include that Fright Night is hazardous due to a combination of tight clearances, a lack of restraints, and the risk of unpredictable movement by patrons.  Lacek found further that, in his opinion, Wade's alleged negligence resided in its failure to eliminate these hazards or take other means to minimize the dangers to riders.

## II.   Defendant's Motion for Summary Judgment.

### A.   Summary Judgment Standard.

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material

---

[1] As a result of a stipulation of counsel (Doc. 13) the word "reckless" has been stricken from the complaint along with its attendant concept of punitive damages.

fact."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof."  Id. at 325.  The non-moving party may not rest on the bare allegations contained

3

in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Id. at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  Anderson, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**B.    Defendant's Argument that Plaintiff's Comparative Negligence Bars Recovery.**

Defendant's comparative negligence argument is based partially upon its assertion that large signs were posted near the entrance to Fright Night advising patrons of the need to keep their appendages within the confines of the car. It is based also upon Plaintiff's deposition testimony to the effect that she understood the need to instruct C. S. to remain within the car and that both she and James Fox testified that they gave C. S. these instructions (Doc 29 at 6-7).  On this basis, Defendant argues that, as a matter of law, Plaintiff's negligence in allowing

4

C. S. to get on the ride exceeded any negligence that may be imputed to Wade and, thus, Plaintiff's allegedly greater degree of negligence bars any recovery for her son's injuries.

However, as Wade itself acknowledges, "it is generally within the province of the jury to determine whether a Plaintiff's negligence serves as a bar to recovery."  (Doc. 29 at 7).  This observation is in accord with relevant caselaw.  See *O'Brien v. Martin*, 638 A.2d 247, 249 (Pa. Super. 1994).  It has also been held that comparative negligence may not be found as a matter of law unless the facts so clearly reveal the plaintiff's negligence that reasonable minds could not disagree as to its existence. *Gregorius v. Safeway Steel Scaffolds Co.,* 187 A.2d 646 (Pa. 1963).  While it may well be that Plaintiff will have a plausible comparative negligence argument to develop at trial, we cannot conclude as a matter of law on the record as it now stands that Plaintiff's negligence exceeded that of Wade.  Consequently, we conclude that this case is one that must be submitted to a jury on the issue of comparative negligence.

> **C.   Defendant's Argument that Pennsylvania's No-duty Rule Precludes Plaintiff's Recovery.**

Defendant cites *Jones v. Three Rivers Management*

*Corporation,* 394 F.2d 546, 550 (Pa.1978) for the proposition that: "[O]nly when a plaintiff produces adequate evidence that an amusement facility in which he or she is injured deviated in some relevant respect from established custom will it be proper for an 'inherent risk' case to go to the jury."  Defendant then argues that relevant sections of the Pennsylvania Code establish that the standards applicable to amusement rides are determined by their date of manufacture and, because "Fright Night" met the standards applicable at the time of its manufacture, the "no duty rule" articulated in *Jones, supra,* insulates it against liability here. Significantly though, *Jones,* a case in which a spectator at a baseball game was injured by a batted ball that struck her as she stood in a walkway behind and above the right field seats, also states that the "...no duty rules...apply only to risks which are 'common, frequent, and expected'...and in no way affect the duty of theaters, amusement parks, and sports facilities to protect patrons from foreseeably dangerous conditions not inherent in the amusement activity."  394 A.2d at 551.  It seems obvious to this Court that, while the risk of being hit by a batted ball at a baseball game is one that can be fairly described as "common, frequent and expected", such is not the case with amusement style rides like the one in this case.  Patrons of rides like "Fright Night" cannot be

6

expected to anticipate, as a matter of law, that they run the risk of mangling an arm during the course of the ride.  Such a result is hardly anticipated by a patron who purchases a ticket for an amusement ride.  This is more particularly so in the context of the instant case in which the warning to keep ones body parts within the carriage, even if it was properly displayed on the date of C.S.'s injury, also permitted persons as short as forty two inches in height to ride unaccompanied by an adult. [2]  Because it allowed persons of such diminutive height to ride, the Defendant clearly contemplated that children would be riding "Fright Night".  The Defendant also specifically acknowledged that children are susceptible to showing emotion and doing something without thinking. [3]  Defendant's appreciation of the forseeability that children may react in an unpredictable manner combined with the fact that the risk of injury on an amusement ride is not "common or expected" (as envisioned in *Jones*) precludes application of the "no-duty rule" as a bar

---

[2] This Court is also aware that there is some question whether the warning Defendant claims was in place on the fateful day was actually there.

[3] The Court concludes that the Defendant appreciated this possibility by resort to the description of the deposition testimony of James Danton (employed by Defendant Wade as its Unit Manager) at page 9 of Plaintiff's Expert's Report.  Neither side has graced the Court with the entire transcripts of depositions taken in this case, a fact that places this Court at a disadvantage here.  There is enough information presented, however, to enable the Court to conclude that a material issue of fact may exist as to whether, in light of the potential dangers Defendant foresaw, the Defendant did enough to ameliorate risk to its patrons.

to recovery in this case and creates a jury question as to whether Defendant should have taken additional measures to protect its patrons.

**C.    Defendant's Argument that Plaintiff's Failure to Produce Evidence of Negligence Serves as a Bar to Recovery.**

Defendant's argument that Plaintiff has failed to produce evidence of its negligence relies upon an overly restrictive reading of Plaintiff's Expert's Report. Defendant would have this Court read the Expert's Report as concluding only that there are "alleged deficiencies with regard to the design of "Fright Night".  (Doc. 29 at 14). From this unduly restrictive reading of the Expert Report Defendant concludes that it supports only a products liability case and, since Defendant was not involved in the design or manufacture of "Fright Night", it is entitled to judgment as a matter of law.

The Court has thoroughly reviewed the Expert Report and, based upon that review, concludes that it creates disputed issues of material fact regarding both the propriety of the warnings that may have been in place and the reasonableness of not installing guards or restraints to prevent patrons from extending their arms outside the confines of the car. (Lacek's Report at 15-18). Both these subjects go to the

8

question of Defendant's alleged negligence.  The failure to install guards or restraints is particularly problematic because a material issue of fact exists whether the Defendant, per the deposition of James Danton, appreciated the danger of "pinch points" and knew that some riders might be incapable of heeding the warnings Defendant provided. These are questions that cannot be answered in the context of this summary judgment motion.  Accordingly, we conclude that Plaintiff's complaint, as augmented by the Expert Report of Thomas P. Lacek, P.E., adequately pleads a cause of action in negligence.  We conclude further that material issues of fact exist requiring submission of this case to a jury.

**III. Defendant's Motion in Limine.**

Defendant maintains that the Expert Report prepared by Plaintiff's expert, Thomas P. Lacek, P.E., is both irrelevant and beyond the area of his expertise and, as such, Lackek's testimony at trial should be precluded.

**A.    Standard for Admitting Expert Testimony.**

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence which states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by

knowledge, skill, experience, training, or
education, may testify thereto in the form of an
opinion or otherwise, if (1) the testimony is based
upon sufficient facts or data, (2) the testimony is
the product of reliable principles or methods, and
(3) the witness has applied the principals and
methods reliably to the facts of the case.

In our circuit the scope of Rule 702 has been amplified and
clarified in *Schneider v. Fried*, 320 F.3d 396 (3d Circ.
2003).  More specifically, *Schneider, supra* at 404, holds
that:

...Rule 702 embodies a trilogy of restrictions on
expert testimony: qualification, reliability and
fit (citing Daubert v. Merrell Dow Pharmaceuticals,
Inc. 509 U.S. 579 (1993).  Qualification refers to
requirement that the witness possess special
expertise.  We have interpreted this requirement
liberally, holding that "a broad range of
knowledge, skills, and trading qualify an expert."
Id. Secondly, the testimony must be reliable; it
"must be based on 'methods of procedures of
science' rather than on 'subjective belief or
unsupported speculation'; the expert must have
'good grounds' for his or her belief.  In sum,

10

> *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Paoli II, 35 F.3d at 742 (quoting Daubert, 509 U.S. at 5900. Finally, Rule 702 requires that the expert testimony must fit the issues in the case.  In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.  The Supreme Court explained in Daubert that Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. 509 U.S. at 591-92.

In a significant post-Daubert ruling, our Circuit held that Rule 702 "has a liberal policy of admissibility." Kannankeril v. Terminix, 128 F.3d 802, 806 (3d. Cir. 1997). It has also been held that "[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified, or because the proposed expert does not have the specialization that the Court considers most appropriate."  Holbrook v. Lykes Brothers S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996). (cited with approval in *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).

**B.    Defendants Argument that Plaintiff's Proposed Expert Testimony is Irrelevant.**

Defendant's contention that Lacek's proposed testimony is irrelevant stems from its misperception that the totality of his Expert Report is designed to support a products liability case based upon improper manufacture or design. (Doc. 31 at 5). [4] In a previous portion (Section II, Part D) of this Memorandum we have outlined our conclusion that Lacek's Expert Report opines on dangers the Defendant should have appreciated and neglected to address. These include: (a) the unpredictability of how patrons, particularly children, might respond to the stimuli presented by "Fright Night"; and (b) the existence of close tolerances ("pinch points") along the course of the ride. It is axiomatic in the law that a business operator like the Defendant has a duty to take reasonable steps to eliminate or at least ameliorate risks that it perceives to business invitees like Plaintiff's minor son. Failure to take steps to discharge that duty gives rise to a plausible claim of negligence. Mr.

---

[4] Embedded in Defendant's brief is also the notion that even if this Court determines that Lacek's proposed testimony is relevant it should be excluded because it "improperly injects concepts of product liability into a negligence claim." This begs the question of what testimony he will ultimately render at trial. Also, because whatever testimony Lacek may render will be subject to objection and because the Court can properly focus the jurors' attention by appropriate points for charge, the Court cannot agree that relevant testimony Lacek may render should be suppressed because it is potentially confusing.

Lacek's Expert Report details measures that Defendant could have taken to prevent the injury Plaintiff's son suffered including the installation of restraints that would have insured that patrons would remain within the confines of the car in which they were riding.  Whether the Defendant's failure to provide that sort of restraint constitutes negligence is a question for a jury to decide.  Mr. Lacek's proposed testimony is, however, obviously calculated to assist the trier of fact and based upon scientific principles.  As such, it is relevant to the jury's determination.

    **C.    Defendant's Argument that Plaintiff's Expert's Testimony is Beyond his Expertise.**

Defendant's first argument that Lacek is testifying beyond his area of expertise is premised on the fact that he is neither a designer nor a manufacturer of amusement rides. While this observation is incontestable, it is also both unpersuasive and bordering on specious.  Mr. Lacek's curriculum vitae reveals that he is a professional engineer who was certified as a Level I Amusement Ride Inspector by the National Association of Amusement Ride Safety Officials until March of 2012.  He avers that he will be testing again for that certification in January of 2013 and that he has chosen retesting every two years as an alternative to taking

additional continuing education courses.  He holds a Bachelor
of Science in Mechanical Engineering from the Pennsylvania
State University (1974) and has been a licensed professional
engineer since 1979.  This Court concludes that, as an
individual with the sort of broad based technical knowledge
possessed by any mechanical engineer, it would be an abuse of
discretion to conclude that Mr. Lacek does not possess the
degree of knowledge and experience to be properly qualified
as an expert capable of testifying as to the cause of the
accident in question and the steps the Defendant potentially
could have taken to prevent it.

Defendant's second argument is that Lacek is testifying
beyond his expertise.  This assertion resides in the fact
that he is neither a physician nor a bio-mechanical expert.
Thus, Defendant reasons that Lacek is unqualified to testify
regarding "how a child might react in a given situation" or
"on the injuries allegedly sustained and their likely cause."
(Doc 31 at 11).  With respect to the fact that children may
react in an unpredictable manner, the Court has doubt as to
whether any expert testimony is needed to support that
proposition.  With respect to the nature of C.S.'s injuries
and their likely cause, Lacek's Expert Report reveals that he
had access to Dr. Mogerman's diagnosis, photographs of C.S.'s
x-rays, and C.S.'s medical records.  Moreover, Lacek notes in

a September 19, 2012 letter to Plaintiff's attorney that:
"Bio-mechanical engineering is the classic field of
mechanical engineering applied to living tissue.  In the
undergraduate degree of bio-mechanical engineering, the
courses differ from those in classical mechanical engineering
by name only."  Thus, Lacek has received extensive education
in bio-mechanics by virtue of his training as a mechanical
engineer.  Beyond that, Lacek's curriculum vitae lists
numerous courses and seminars he has attended that deal with
subjects of a bio-mechanical nature.  Based upon Lacek's
educational achievements, work experience, and professional
associations, this Court must conclude that he possesses the
requisite level of expertise to assist the jury in
understanding the nature and cause of the accident in
question.[5]  To rule otherwise, would frustrate the liberal
policy underlying the qualification of experts in the Third
Circuit.

---

[5] Defendant's argument that Lacek is not "an appropriate expert to opine on the injuries sustained and their likely cause" because he is not a physician is based upon too narrow a view. While a physician would be an appropriate choice to render such testimony, the law is clear that relevant expert testimony may not be excluded simply because the expert a party has chosen does not have the precise specialization that the Court deems most appropriate. *Holbrook, supra*.  The fact that Lacek is not a physician goes to the weight of his testimony, but not to its admissibility.

**IV.    Conclusion.**

For the foregoing reasons, Defendant's Motion for
Summary Judgment and Defendant's Motion in Limine must be
denied.   An Order consistent with this determination will be
issued simultaneously with this Memorandum.

S/Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Judge

Dated: November 26, 2012

16